

IN THE
TENTH COURT OF APPEALS

_____

No. 10-22-00303-CV

IN THE INTEREST OF
Z.J. AND Z.J., CHILDREN

_____

From the 272nd District Court
Brazos County, Texas
Trial Court No. 21-001037-CV-272

## MEMORANDUM OPINION

In two issues, the mother of Z.R.J.[1] (Mother) appeals the trial court's final order awarding joint managing custody of Z.R.J. to Mother and Z.R.J.'s father (Father). We will affirm.

### Background

The Department of Family and Protective Services (the Department) removed Z.R.J. and his half-siblings from Mother's care following allegations of drug use,

---

[1] The heading in this case includes two children with the same initials—Z.J. The record reflects that the initials of the child that is the subject of this appeal are Z.R.J. Z.R.J.'s older sibling, Z.B.J., who is also included in the heading as Z.J., is not a subject of this appeal.

neglect, and refusal to comply with the Department's requirements.[2]  Z.R.J. was placed with Father, who moved to Huntsville so Father's mother (assigned the pseudonym "Lily" in the parties' briefs) could assist in caring for Z.R.J.  The Department sought family reunification rather than termination of Mother's parental rights.  After a bench trial, the court awarded joint managing conservatorship of Z.R.J. to Mother and Father, with Father having the right to determine Z.R.J.'s primary residence.  The trial court additionally ordered Mother to pay child support.

## Issue One

In her first issue, Mother asserts that the trial court abused its discretion by appointing Father the person with the right to determine Z.R.J.'s primary residence.

AUTHORITY

Unlike findings necessary to support termination of parental rights, which require clear and convincing evidence, findings regarding conservatorship and child support are governed by a preponderance-of-the-evidence standard.  *See* TEX. FAM. CODE ANN. § 105.005; *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

The primary consideration in determining issues of conservatorship and possession of and access to a child is the best interest of the child, and the trial court is given great latitude in determining what is in a minor child's best interest.  TEX. FAM. CODE ANN. § 153.002; *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).  That

---

[2] The Department removed Z.R.J. from Mother's home along with five half-siblings.  Z.B.J. and the four younger half-siblings were not fathered by Father.  Mother entered into a Rule 11 agreement with the father of Z.B.J.  As of the time of trial, the Department continued to oversee Mother's care of the four youngest half-siblings.  The father of the three youngest half-siblings is assigned the pseudonym "Jose" in the parties' briefs.

broad latitude applies also to the trial court's designation of the parent responsible for determining the child's primary residence and whether to specify a geographic limitation. *In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.); *see also Morris v. Veilleux*, No. 03-20-00385-CV, 2021 WL 4341967, at *2 (Tex. App.—Austin Sept. 24, 2021, no pet.) (mem. op.).

We use an abuse-of-discretion standard when reviewing a trial court's ruling on issues related to conservatorship. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021), *cert. denied*, --- U.S. ---, 142 S.Ct. 1139, 212 L.Ed.2d 24 (2022). The abuse-of-discretion standard applies as well as to what is in the best interest of a child in relation to those matters. *Id.* The trial court abuses its discretion when it acts "'without reference to any guiding rules or principles, or in other words, [when it acts] arbitrarily or unreasonably.'" *Id.* (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

When applying an abuse-of-discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are factors used in assessing whether the trial court abused its discretion. *In re J.J.R.S.*, 607 S.W.3d 400, 404 (Tex. App.—San Antonio 2020), *aff'd*, 627 S.W.3d at 211; *see also In re A.L.E.*, 279 S.W.3d 424, 427-28 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A trial court does not abuse its discretion when there is "some evidence of a substantive and probative character to support the trial court's judgment." *J.J.R.S.*, 607 S.W.3d at 404 (quoting *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). We consider only the evidence most favorable to the trial court's ruling and will uphold its

judgment on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109; *see also Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011).

When no findings of fact or conclusions of law are filed following a bench trial, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). "[W]here a reporter's record is filed, as in this case, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues." *In re G.B. II*, 357 S.W.3d 382, 385 n.1 (Tex. App.—Waco 2011, no pet.).

The trial court, as the finder of fact in a bench trial, is in the best position to determine the candor, demeanor, and credibility of the witnesses. *In re Marriage of Elabd*, 589 S.W.3d 280, 288 (Tex. App.—Waco 2019, no pet.). "[W]e defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision." *Id*. An abuse of discretion generally does not occur when a trial court bases its decision on conflicting evidence. *Id*. It is within the fact finder's province to resolve such conflicts in the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

> The court presumes that appointment of parents as joint managing conservators is in the best interest of the child. *See* TEX. FAM. CODE § 153.131. . . . [T]he court must specify the rights and duties of conservatorship that each parent may exercise, and it is not required to award these rights equally or require that they be exercised jointly. *See id*. § 153.071; *Stillwell v. Stillwell*, No. 03-17-00457-CV, 2018 WL 5024022, at *4 (Tex. App.—Austin Oct. 17, 2018, pet. denied) (mem. op.). When parents are appointed joint managing conservators, the court must designate the parent "who has the exclusive right to determine the primary residence of the child," either with or without geographic limitations. TEX. FAM. CODE § 153.134(b)(1).

*Wright v. Berger*, No. 01-18-00964-CV, 2020 WL 1917839, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, no pet.) (mem. op.).

In determining the best interest of a child, the appellate courts have generally held that the evidence should be evaluated using the non-exclusive factors enumerated in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). *See In re A.J.M.*, No. 10-14-00284-CV, 2016 WL 936869, at *3 (Tex. App.—Waco Mar. 10, 2016, no pet.) (mem. op.); *see also In re Doe 2*, 19 S.W.3d 278, 282 n.20 (Tex. 2000) (recognizing that intermediate appellate courts use *Holley* factors to ascertain best interest of child in conservatorship cases). These factors include:

> the child's desires; the child's current and future physical and emotional needs; current and future emotional and physical danger to the child; parental abilities of the persons seeking custody; programs available to assist those persons seeking custody to promote the best interest of the child; plans for the child by the individuals or agency seeking custody; stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions.

*In re A.L.H.*, 515 S.W.3d 60, 79 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Holley*, 544 S.W.2d at 371-72). This list of factors is not exhaustive, and evidence is not required on all the factors. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

DISCUSSION

The record reflects that Z.R.J. was placed with Father shortly after his removal from Mother's custody and had lived with Father and Lily for a year and a half at the time of trial. Father is building a house where he and Z.R.J. can reside. Z.R.J. has done

well in school, and he will remain in the same school district once Father has completed their new house. Father is employed full time. Lily does not work and is available to help with Z.R.J. when Father is at work. Mother, the Department, and the CASA representative were in agreement that there were no concerns with this arrangement. The Department and the CASA representative agreed that it was in Z.R.J.'s best interest for Father to either be appointed sole managing conservator of Z.R.J. or to be appointed joint managing conservator with Mother provided Father had the right to determine Z.R.J.'s primary residence. Mother testified that Z.R.J. loved Father and that she was not opposed to Z.R.J. remaining with Father if Z.R.J. desired.

Mother had repeated contacts with the Department regarding her care of all of her children. Z.R.J. and his half-siblings were removed from Mother's custody after she left them with an intoxicated caregiver while she and her boyfriend, Jose, were on a trip out of state. The Department representative and the CASA representative testified that Mother's continuing relationship with Jose was problematic because Jose refused to work services and admitted to dealing illegal drugs. Jose was not supposed to be in the home when the children visited Mother, but Z.R.J. and some of the other children reported that Jose stayed overnight while they were with Mother. Mother allowed Jose into the home when the children were there even though she knew that Jose had tested positive for methamphetamine and cocaine during the case. Mother testified that she knew Jose was not safe to be around the children.

Z.R.J. told Father that Jose had "whooped" Z.R.J. because Jose was in a bad mood. Z.R.J. also told Father that Mother would punch Z.R.J. in the chest rather than

spanking him. Mother also attempted to "coach" Z.R.J. to speak favorably about her by promising him a kitten. Mother provided Z.R.J. with a debit card to purchase whatever he wanted, although she did not provide funds to Father for food or other support for Z.R.J. Mother was employed as a caregiver at the time of trial and is paid $11.00 per hour on a bi-weekly basis.

Mother testified that she had been diagnosed with PTSD, anxiety, and bipolar disorder and that a physician had prescribed medical marijuana. Mother further testified that the physician told her to take the marijuana "as needed" and that she would do so even when the children were in her custody.

Mother's rationale for having Z.R.J. returned to her custody was that she had his siblings in her care and did not believe it was best for the children to be separated.

Reviewing the evidence in the light most favorable to the trial court's ruling and in light of the *Holley* factors, the evidence in the record is legally and factually sufficient to support the trial court's order appointing Father as the parent responsible for determining Z.R.J.'s primary place of residence.

## Issue Two

In her second issue, Mother requests reversal of the trial court's order requiring her to pay child support. Specifically, Mother frames this issue thus:

> As explained in the First Issue, the trial court's finding regarding which parent can designate [Z.R.J.]'s primary residence is contrary to the great weight and preponderance of the evidence. While it is true that a trial court may order either parent to pay child support without regard to the conservatorship and possession provisions, trial courts traditionally (but not always) require the non-custodial parent to pay child support. [Mother] asks this Court to reverse the child support award and remand

to the trial court for reconsideration as it reconsiders the conservatorship and possession aspects of the decree. Alternatively, [Mother] contends the trial court abused its discretion by ordering her to pay child support because the trial court's finding regarding designation of [Z.R.J.]'s primary residence is contrary to the great weight and preponderance of the evidence.

As we have concluded that the trial court's finding that Father should be designated the parent responsible for determining Z.R.J.'s primary residence is not contrary to the great weight and preponderance of the evidence, we also conclude that the trial court's finding that Mother should pay child support is not contrary to the great weight and preponderance of the evidence. We overrule Mother's second issue.

## Conclusion

Having overruled both of Mother's appellate issues, we affirm the trial court's judgment.


MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Affirmed
Opinion entered and filed February 22, 2023
[CV06]

